# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ERIC LEE CHILDRESS,<br>    Plaintiff | )<br>)  Civil Action No.: 7:16cv00221<br>) |
| v. | )<br>)  **REPORT AND RECOMMENDATION** |
| S. AINSWORTH and<br>J. MURPHY,<br>    Defendants | )<br>)<br>)<br>) |

The plaintiff, Eric Lee Childress, ("Childress"), an inmate currently incarcerated at Keen Mountain Correctional Center, filed this civil rights action pro se pursuant to 42 U.S.C. § 1983. The defendants in this case are employees of the New River Valley Regional Jail in Dublin, Virginia, ("NRVRJ"). Childress alleges that, while an inmate at NRVRJ, he was sexually assaulted by S. Ainsworth while defendant J. Murphy did not intervene to stop the assault. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing and render a report and recommended finding as to the defendants' defense that Childress's claims are barred by his failure to exhaust his administrative remedies. An evidentiary hearing was held before the undersigned on March 23, 2013.

*I. Facts*

In his Complaint, Childress alleges that on December 2, 2014, while he was detained pretrial at NRVRJ, jail investigators Ainsworth and Murphy and correctional officer Atkins came to his cell to conduct a cell search. (Docket Item

No. 1.) Childress alleges that, while Murphy searched his cell for contraband, Ainsworth told Childress to stand facing the wall of his cell for a pat down search. Childress alleges that, during this pat down search, Ainsworth fondled Childress's testicles and penetrated his rectum with an unidentified object. Childress alleges that he said aloud that Ainsworth was hurting him, but Murphy did not stop Ainsworth's actions.

At the evidentiary hearing, Childress testified that, after this incident, he sent a Request for Services form to the Medical Department or Mental Health Department at NRVRJ during the next week. Childress said that he requested to speak to someone "about an assault having to do with an officer." Childress said that he tried to be "vague" about what happened to him on this request form. Childress said that, after he sent this form, he was called into Murphy's office where Murphy told him that all such complaint forms had to go through him. Childress said that he later reported the incident to Officer Youngblood, who reported Childress's allegations against Ainsworth and Murphy to the Virginia State Police.

Childress testified that Captain Brown gave him a Grievance form on which he complained of the assault by Ainsworth and Murphy's failure to intervene to protect him. Childress said that his Grievance was denied initially and on appeal at all three available levels of review. Childress said that the initial response to his Grievance was made by Captain Fleeman, who responded that the jail would look into the matter and talk to the officers. When he never got any further response, Childress said, he appealed his Grievance to Level II, and Lieutenant Colonel Lawson responded the same as Fleeman. Childress said that he appealed his Grievance to Level III, and Gerald McPeak, the Superintendent of NRVRJ,

responded that he would look into it further. Childress said Level III was the highest level of appeal. He also said that each appeal was filed within the required time frame.

Childress testified that these Grievance forms and responses were in his cell when Officer Travis came into his cell on June 15, 2015, and took all of his paperwork. Childress said that Travis took any of his paperwork that had any handwriting on it. He said that Travis used a gray cart to take his paperwork away. He said that Travis told him that he was investigating an allegation of "three-way" mail against him. Childress testified that, when Travis returned his paperwork, he noticed that his Grievances and responses were missing. Childress said that a response from Captain Murphy to a Grievance he filed over being held in segregation proves that his paperwork was taken from his cell. The response, (Docket Item No. 19-2 at 2), which was dated June 24, 2015, stated, in part: "As for your assertion you have not broken any rules this appears to be misleading. As re[c]ent as last week you and Inmate Taylor have been communicating by three way mail. This is supported by seized correspondence from your cell and Inmate Taylor."

Childress admitted that he never filed a request or Grievance regarding the confiscation of his paperwork. Childress conceded that he had received an NRVRJ Inmate Handbook from another inmate sometime before December 2, 2014. On cross-examination, Childress admitted that he filed a Verified Statement with the court in this case, (Docket Item No. 2), on which he indicated "I have attempted to exhaust my administrative remedies but my grievance was rejected as untimely. I have appealed that determination to the highest level available. I have attached documentation verifying my attempts to exhaust administrative remedies."

Childress admitted that his Grievance regarding the alleged December 2, 2014, sexual assault was not rejected as being untimely filed. Childress said that he did not check the box indicating that "I have exhausted my administrative remedies as to each of the claims raised in my complaint by appealing my claims to the highest available level of the administrative remedies procedures" because he did not have copies to attach to the statement. Childress also testified that he suffers from generalized anxiety and schizoaffective disorder and becomes confused easily.

Gerald A. McPeak, who served as Superintendent of NRVRJ from July 2007 to April 2016, testified that the administrative remedies procedure of NRVRJ previously was provided to the court with regard to the defendants' motion for summary judgment on the issue of failure to exhaust administrative remedies. (Docket Item No. 17-1.) McPeak said that this grievance procedure required an inmate to first make an informal request to correct his complaint. If the complaint was not corrected, the inmate, then, was required to file a written request. If the written request did not correct the complaint, the inmate was required to file a formal Grievance within 10 days of the event. McPeak said that an inmate had only 48 hours to file an appeal of a Grievance response to Level II or III.

McPeak testified that he did not recall any appeal to Level III by Childress of his claims of sexual assault. McPeak said he would remember such an appeal because of the inflammatory nature of the allegations. McPeak said that NRVRJ keeps copies of all inmate Grievances in the inmates' files in the record room. He said that when he learned that Childress had filed this lawsuit, he instructed Ainsworth to secure Childress's inmate file to preserve it. McPeak testified that he reviewed Childress's file, and it did not contain any Grievance regarding his allegations. He said that, if Childress had exhausted his administrative remedies as

required, copies of his Grievance and responses would be contained in his inmate file.

Marty N. Stallard, NRVRJ Director of Security, testified that, if Childress had appealed a Grievance regarding an alleged sexual assault, that appeal would have been reviewed by him. Stallard said that he did not recall reviewing any such appeal. Stallard also said that the custodian of the inmate files had looked through Childress's file, and it did not contain any such Grievance.

Officer Mark Wesley Travis testified that in June 2015 he searched Childress's cell with regard to investigation of a three-way letter. Travis explained that a three-way letter was a letter between jail inmates that was mailed to someone outside the jail, who mailed the letter back into the jail to another inmate. Travis stated that, as a result of his search, he confiscated one handwritten letter. Travis said that, when he searched Childress's cell in June 2015, he was not aware of Childress's allegations against Ainsworth and Murphy or this lawsuit. He said that no one told him to seize any of Childress's Grievance documents. Travis said that he did not remember taking any document from Childress's cell other that the one handwritten letter. He said that he delivered that letter to Investigators Murphy and Ainsworth. Travis conceded that he did not charge Childress with any disciplinary infraction as a result of what he found.

Ainsworth testified that he worked as an investigator at NRVRJ in December 2014. He said that he learned of this lawsuit when he was served with the Complaint. He said that he was instructed to pull Childress's inmate file, secure it and make copies for defense counsel, which he said that he did. He said that he

never removed any paperwork from Childress's file and did not destroy any of the paperwork contained in the file.

*II. Analysis*

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of

appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90. Thus, before Childress may proceed with his claims in this court, he must first have exhausted the administrative remedies available to him through the NRVRJ grievance procedure. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper become unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, the defendants have asserted this affirmative defense, and the evidence presented persuades me that Childress failed to exhaust his administrative remedies. Childress does not claim that he was prevented by anyone at NRVRJ from exhausting his administrative remedies. Instead, he claims that he did exhaust, but that the copies of the documents which would prove that he exhausted his administrative remedies were taken by Travis. Childress's claims, however, have been disputed by every defense witness. Travis testified that he did not take any of Childress's Grievance forms. McPeak and Stallard, the jail officers who would have reviewed any appeal of Childress's Grievance, each testified that he had no recollection of an appeal of any such Grievance. Furthermore, there is no record contained in Childress's inmate file that he ever filed or appealed any such Grievance. Finally, when Childress filed this lawsuit, he made no claim that he had exhausted his administrative remedies through all levels of appeal. Instead, he claimed that he had attempted to file a Grievance that was rejected as being filed untimely, which he now admits was false.

For all of these reasons, I am persuaded that Childress did not fully exhaust his administrative remedies, and, therefore, his claims are barred and should be dismissed.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Childress did not properly exhaust his administrative remedies under the NRVRJ grievance procedure.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court dismiss Childress's claims against the defendants based on his failure to exhaust his administrative remedies before filing suit.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: April 13, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE